Fifth Circuit Court of Appeals. We have one case on this afternoon's docket, United States v. Daniels. Ms. Gore. Good afternoon, Your Honors. My name is Kimberly Gore. I'm here with the Office of the Federal Public Defender, Ms. Leilani Tynes and Ms. Victoria McIntyre. And together, we represent Mr. Daniels in this appeal. I would like to reserve five minutes of my time for rebuttal. Your Honors, you were right. Your decision the first time in Daniels was absolutely correct. And we know this because Rahimi tells us that the principles you applied were correct. And we know this because Connolly reached the exact same decision that it did in Daniels the first time. Mandate has issued in Connolly now, right? Excuse me? Mandate has issued in Connolly? The mandate has not yet issued in Connolly. Okay. What was the date of issuance? It may have issued it because your original decision was August the 28th in Connolly. I think there's a status conference next week. Okay. Yeah, the mandate has issued. Has issued. Yeah, there was no petition for rehearing, so. My understanding is the petition for rehearing was outside of time, and this court denied the request for them to accept the time.  There may be a cert petition coming, but to my knowledge, it has not yet been filed. So Connolly controls us. I believe so, Your Honor. Does that mean, though, that there will be a retrial? There should not be a retrial in this case. Connolly was decided as a legal question on a motion to dismiss the indictment. We also had a motion to dismiss pretrial, and that's the posture that the case should be in for determination of this constitution. But we don't know. Connolly will probably be set for retrial, a legal error motion to dismiss. Why wouldn't the government be able to proceed? My understanding is that the trial is going to proceed on the D-3, but as for G-3, it's been declared unconstitutional as applied to me. But the motion to dismiss here was based on facial unconstitutionality, and that, of course, has not been upheld. No, Your Honor. We had an as-applied challenge. Are you sure of that? Yes, Your Honor. Yes, Your Honor, we are. Okay, but so therefore it was as-applied, and then it was applied to him. We have a full trial record. How would the government not be able to retry if there's legal error? Well, Your Honor, in this case, it's a constitutional question. All of the cases that have been applying Bruin are doing it from a pretrial perspective. Right, but Connolly says constitutionally you can prosecute somebody provided the use is active. Connolly also says that for a marijuana user, a repeat marijuana user does not automatically qualify as somebody who would be able to proceed under G-3, and the facts in Connolly are nearly identical to the facts that we have here. But here the entire closing argument was whether it was active use or not. That was the Rule 29 argument. That was everything in this case. Right, but that was not the argument that we made on the motion to dismiss the indictment under Bruin. The motion we made to dismiss under Bruin was based on an as-applied challenge that Bruin prohibited the application of G-3 to Mr. Daniels. Right, but then it depends on the facts as applied. We have the trial record. We have the facts. As I understand it, correct me if I'm wrong, you would be able to avoid any re-prosecution. I don't know what the government's view of this is. This has had to have been facially unconstitutional or if there were insufficient evidence as a matter of law applying Jackson. I don't think you've applied Jackson here saying no jury in the light most favorable could find active use here. And our argument was that it never should have gotten to a jury in the first place. Connolly was done on a motion to dismiss, and the facts that the court adopted there and at this court were based on the facts that were alleged in the indictment. There was no jury trial in Connolly. I'm not so much worried. Here we have a trial. Then you get to the charge conference, and you don't oppose the active use instruction given. You don't even oppose the recency codicil, which now on my reading of Connolly wouldn't be correct. Am I correct? You didn't oppose either. I believe that's right, Your Honor. We didn't oppose the jury instruction, but the jury instruction itself is unconstitutional. But you didn't oppose it. You have to oppose it. Do you acknowledge that you're here on plain error then? No, we do not acknowledge that at all. We are here on the motion to dismiss that was filed pretrial and was renewed at the end of our case, not on the jury instruction. So what case do you have that says you can file a pretrial motion saying unconstitutional as applied, and that means you can't get the facts applied? What case stands for that? Your Honor, the argument that we're making is that the question before the court is a constitutional question. But that's been answered in Connolly. It has. And Connolly said there is a historical tradition to support 922G3, banning presently intoxicated persons from carrying a weapon. There is a historical precedent. So as long as the government approves active use. And they did not, Your Honor. But that's what you had at the Rule 29 when the court said, isn't this a jury question? The defense attorney, you remember, said perhaps. Perhaps was the answer. That was the exact question of the district judge. Did they prove it, active use? Perhaps. Go to the jury with an instruction. You didn't object to it. But the standard in the jury instruction is different than the standard for active intoxication under Bruin and Rahimi and Connolly. The standard for active intoxication would have required more than the jury instruction required. I agree now. I think my own view of it is you should have objected using Bruin and Rahimi. It was all there. It's not as if Connolly plowed new ground in that. But if the standard was different, that's just a classic situation where we're saying legal error, jury instructional error. And you even, you didn't object. So it's subject to plain error. You may win. It may be clearly erroneous. But, therefore, you retry the case. The government gets to see if the facts comply with the correct legal standard. And, Your Honor, I don't agree. Because this was raised as a constitutional question on a motion to dismiss the indictment, it's in the same procedural posture that Connolly was. And Connolly notes there was no evidence that Mrs. Connolly was actively intoxicated at the time, making the statute unconstitutional.  But here you agree there was evidence. This was the entire closing argument. You say, the police say, they approach the car, window goes down, they smell the marijuana. That's at least a jury question. But there's no evidence of recency. Right? Those were clearly Right. Recency is wrong as a matter of law. That is wrong, even though you agreed to it. It's wrong. So at a retrial, there will be no recency. But we have to now, the government gets a chance, not a windfall. The government gets to say, we can prove active, present use, during, while, right now. But they couldn't. But the police said they smelled it. Sure, but you can smell old cigarettes. That's a good closing argument. That's a good closing argument. But the question is, was there any evidence that he was actively intoxicated at the time? That was the standard that was applied in Connolly. And it's very clear that there was no indication at all that he was intoxicated. Just as the officers in Mrs. Connolly's case approached her home, they didn't notice any signs of active intoxication. That was good enough for this court to make a finding that the statute was unconstitutional as applied to her. It's the same set of facts here. It's just that the government may agree. It would sound to me you'd be making all of these arguments to the district court at a retrial. You'd say, we've got to modify the pattern instructions. Use now means active use. And maybe or maybe it doesn't mean active use and intoxication. Let the jury decide. Why are you resisting that? Isn't that what we do when there's jury instructional error? But, Your Honor, I don't think there is jury instructional error as the sole basis for our appeal here. Did you assert instructional error at all, or are you here before me saying you forfeit that? Your Honor, I actually can't recall. I didn't try the case. No, in your brief, did you say there's jury instructional error, yes or no? We argued that the jury instructions were vague and that the statute was vague and overbroad because it doesn't define things like recency. In Connolly, we didn't resolve that. In Connolly, you didn't resolve that. But are you presently arguing to us there was or not jury instructional error? Because if you're saying there's no jury instructional error, then that's not even plain error review. You've relinquished that issue. I'm saying the jury instruction violated the constitutional standard. Okay, so then wouldn't you correct the jury instruction? Why? And I'm saying you don't even have to. What's your case for that? The procedural posture of Connolly alone is sufficient for that. Do you have any case that says when there's legal error in a jury instruction, constitutional or otherwise, legal error that the government couldn't have anticipated and both parties agreed to it at the trial, they still can't ask a jury is there active use here or not? But there was an objection. There was a disagreement about whether that was the actual standard to be applied when we filed the motion to dismiss under Bruin. And when we made the argument that the statute was not consistent with the historical standards set forth in Bruin, the historical analogs did not exist. And that was the argument we made pretrial.  And renewed. Yes. The constitutional question. You said it should never have gone to trial. That's your position. Absolutely, Your Honor. But now we know from Connolly it can go to trial if there's active use. But the decision in Connolly specifically avoids the question. If that's the situation, then Connolly isn't going to trial. Well, Connolly's facts are very different. Here you've got police testifying. They walk up to the car and they smell marijuana. And you've got the Daniels admitting he used it half of the 14 days out of the month. It's a debatable issue. He also said that he had not used for some period of time and there were no signs of active intoxication. You may well win, as I see it under the Connolly standard. You may well win. I think we should. I think it's a legal question that doesn't require resolution at trial. Just as in Connolly if there was a question of active intoxication on the motion to dismiss, the government didn't even make that argument because there was no evidence. And there was no evidence at the time that Mr. Daniels was picked up and arrested that he was actively intoxicated or currently using. And so the facts are the same. The procedural posture should have been the same. Bruin was so recent at the time. What if on Wednesday at the status conference Connolly gets set for trial? Your argument would be completely wrong, correct, right now. I would expect that the defendant's attorney would file a motion to dismiss as well. So it may get set for trial, but that may not mean it goes to trial. File a motion dismissing. We know that the government has no way to prove active use under Connolly. And here I expect the government is going to get up and say we think there was active use. We proved it. The jury was given too broad an instruction. They could have convicted him on stuff now that under Connolly can't convict, but we had a fighting chance. We get to go to a jury that if you smell marijuana, it's an inference a jury can make that he's using it. And I'm not sure that that's a fair inference. Okay. Well, that sounds like a jury argument. We don't make those calls. But I'm just dialoguing with you. Go ahead. You have more time, and I've asked a lot of questions. So, Your Honors, I think one of the questions that came up when I was here the first time was sort of wrapping our brains around what the scope of the Bruin test is. And Rahimi clarified a lot of the questions, Judge Higginson, that you had in your concurrence. So what the Rahimi decision did is it clarified that, yes, the Bruin test is the one to be applied. It also requires this court to take a granular look at the analogs that the government presents. And then also it states that they really have to focus on the why and the how axes. And I think that wasn't completely clear at the time. I know that was one of your questions in the concurrence. And so one of the things I think that the Connolly decision did that was really interesting is they took that question of why and how and the principles language that Rahimi used, and instead of starting with the most specific analog like you did in your decision in Daniels the first time, they actually started with the broader principle and dealt with the historical analogs that the government presented that were broader and then funneled their way down to the more specific so that it did capture the spirit of the Rahimi language about utilizing principles and not requiring a historical twin. And I actually made the decision to, as I was reading Connolly, I was hearing echoes of your decision in Daniels. And so I was able to overlay those two decisions, and I can see the same statutes that were cited in the government's argument here were cited in Connolly. The same analysis that the government presented was cited in Connolly. And in the Connolly decision, it picked up phrases and entire sentences from your decision, which tells me that even post-Rahimi, the Daniels decision was correct, and Mr. Daniels' conviction should have been vacated and remained vacated. So this is obviously an as-applied challenge. We're looking at the law's application to a specific set of facts. So just a housekeeping question. Are we limited to considering only those facts that were actually presented at trial, or are we free to take into account other undisputed facts that may be in the record but that weren't presented at trial? Do you have a specific example you could share, Your Honor? For example, and I'll ask your friend on the other side when it's his turn. As I view things, the government really introduced no evidence at trial regarding your client's past violent behavior. Is that true? I believe the record that you're referring to is the PSR. Yeah, the government cited to the pre-sentence report, and none of those facts were presented at trial. So I just didn't know what our latitude was to consider facts maybe undisputed, maybe uncontested, but they weren't presented at trial. So I think there is a more recent decision that helps give you guidance on that, and that's United States v. Diaz, which was issued, I believe, on September the 18th. So its mandate date should be coming very shortly. Math is not my forte. That's why I went to law school. Exactly. So Diaz tells us that any analysis under Bruin must be closely focused on the elements for the subsection that are being charged. So, for example, in Diaz, there was a G-1 charge that he was currently facing. That was the basis of the Bruin motion. And Mr. Diaz had felony convictions for theft and some drug possession, but he also had some misdemeanors that were asked to be considered by the court, and this court decided that no, anything that's non-felony has no business being discussed in the Bruin analysis. And, Your Honor, I think the same thing should apply here. He was charged with subsection G-3, which is being an unlawful user in possession, and whether or not he has a reckless driving conviction, which was a misdemeanor, or whether or not he had charges dismissed, which was also the case in Diaz, those aren't part of the Bruin analysis for the subsection. Now, if Mr. Daniels was facing or had faced conviction for another subsection that he could be charged with, then the government would be free to bring that, and if that behavior is relevant, they could bring it. But it is not relevant to the question of whether or not G-3 applies here. What about paragraph 63 that he failed a urine test? I believe that was a simple post. Well, contemporaneous with the possession of the gun, he has dirty urine. Again, that would be evidence that had not been proven, beyond a reasonable doubt. I know. This is in line with the question of what would be appropriate for the government to prove it post-connolly. You're bringing this case in the first instance. They charge your client, say he's active using. They say the police said they smelled it, they found the butts, he admitted 14 days out of the last month, and dirty urine. But does that go to the jury? I think that's so fact-dependent, I'm not sure I can give you a very straightforward answer on that. For example, if he's out on bond and the urinalysis is done three months in after his arrest but before trial, if that's the only test, I would argue that doesn't indicate that he was an active user. Do you know the facts of this dirty urine? Because it wasn't a post. You didn't object to that paragraph. I don't know, Your Honor. But given that it was done as part of the PSR, it may have been done after the conviction. I'm not sure. And if the PSR doesn't say, I don't want to speculate. Your Honors, again, I'd like to turn back to the why and the how. The why and the how should dictate exactly how this court analyzes subsection G3, and Connolly does a really good job of doing that. So when we look at the broadest of the analogs, which was the mentally ill analogs, this court was very clear that it's just an untenable proposition because even among the mentally ill, it was a temporary restriction. And in this case, this is a permanent restriction on use. Additionally, So that's on the how problem, right? That's on the how. As for the why, to quote Connolly, at best, scholars suggest the tradition was implicit and that institutionalization only occurred when someone was so unable to function or presented such a danger to themselves or others that there was no alternative but to do so. And that's simply not the case with G3. G3 is much broader than that. And so the why is not consistent with what this court has required, with what Connolly has required, with what Rahimi and Bruin require. Again, we have to remember that G3 is presumptively unlawful once it's established that Mr. Daniels is one of the people entitled to Second Amendment right and that his behavior, which was mere possession of a firearm in this case, in his automobile, is a right that would be protected by the Second Amendment. So we have to start with the presumption that G3 is unlawful and move from there. When it comes to dangerousness, which was the second analog that the government presented, dangerousness, the why there also is not consistent with our historical tradition. That historical tradition was for political dissonance. It was for religious minorities. Connolly has already answered all these questions, right? We're bound. It has, Your Honor. I do think that one of the questions that we pondered and we footnoted it in one of our supplemental briefs is that there may be some tension for you between the rule of orderliness and the Supreme Court's direct order for you to take a look at Daniels post-Rahimi. It's not clear from the GVR whether that means the Fifth Circuit broadly or whether this panel was specifically required to look at it. But I think in this case there's not really any tension. You don't have to decide today whether in this situation you have to pick one or the other. Well, we're bound by Connolly. Yes, Your Honor. And so it comes back after Rahimi, but now we have an intervening interpretation of Rahimi. It's Connolly. It's this subsection. Yes, Your Honor. We believe that's correct. I guess on the issue of stare decisis, though, are we really that bound by Connolly? And here's why. As you pointed out the first time this case was argued, the government presented almost no historical evidence, right? In district court they presented virtually nothing. It was their heavy burden. They presented nothing. We contemplated remanding. It was not accepted by the government. But let's say now in another case somewhere in the United States the government puts on a lot of expert Ph.D., and they find out that back in the framers' era anyone using opium, actually there were all sorts of laws saying they couldn't have guns. So new facts are found. That doesn't mean we're bound at this point by Connolly, right, if the government made very little effort with history here and then it becomes evident with real history that there was a different tradition, we wouldn't still be bound by Connolly, would we? And that may have been the case when Bruin was so new. I believe the government's position at the time was actually we don't have to do that. We don't have to present historical analogs. But Connolly, that argument was made very recently, and so Bruin has been fleshed out a little more. We have the benefit of Rahimi now. We've seen what courts across the country are doing, and they're taking the Bruin test very seriously. So if there were additional historical analogs to be had, they should have arisen in Connolly. It could be as significant as maybe a 28-J letter in this case. We found some historical evidence that we would like to use to supplement the record, and then we could fight about that procedurally. But they haven't done that. And so I think you can be reasonably confident that the history is what the history is and that these historical analogs are the best that the government can come up with. And it's not that the government is a small firm sitting somewhere, and this is the Department of Justice. They have the power of the United States government. If they wanted to find the history, they could. But it works both ways. I'm assuming in a case where we say there are historical analogs, you'd probably say, well, fine, that may be imperfectly done. It goes up. The Court of Appeals says, yep, this is a valid gun prohibition. But then you guys diligently go to the Duke Center and find historians, and lo and behold, that wasn't a valid tradition. You'd presumably be able to say we get to revisit this. Well, I believe even in Connolly there was a footnote about the principle of party presentation, which we have discussed here as well in our briefing. And I think the Court there noted that, yes, they had gone to look at the Duke Center repository as well and had not seen anything. And I have spent quite a bit of time on that website as well. And the historical traditions and the historical evidence on this particular issue is what it is. And I think it's been fully fleshed out. The government has had ample opportunity to raise additional analogs, maybe not in this case but in other cases, and they insist on presenting the same arguments. Your Honors, at the end of the day, Connolly controls. At the end of the day, Rahimi tells us that the how and why of these historical analogs controls. At the end of the day, this court got it right the very first time. And so for those reasons, we would respectfully request that this court reinstate the Daniels decision, vacating his conviction and releasing him. And if there are no other questions. All right. You've saved time for a vote. Ms. Gore, thank you. Mr. Buckner. May it please the Court. I'm Jonathan Buckner, and I represent the United States in this appeal. I want to start about midway through where you started with opposing counsel, and that is this. The jury actually found that Mr. Daniels was actively engaged in the illegal use of controlled substances. They were instructed that to return a guilty verdict, they had to find it. So they found that when they returned the verdict. They did find that, but then they were also allowed to find a guilty verdict based on use weeks or more than weeks earlier. That just can't be supported after Connolly. Connolly, the way I read Connolly is to take issue with specific language that said prior conviction a year ago could be used to infer current drug use. But that's not what the jury was instructed here. What the jury was instructed here was past drug use can lead to an inference, but you still have to make the finding that he's actively engaged in illegal drug use. And so it's not the same as the definition with which the Connolly court took so much issue. Am I right or am I wrong? In the same paragraph as both parties agreeing actively, then the instruction to the jury was it doesn't even have to be same day. It doesn't even have to be the same weeks. Did that happen or not? Were they told that or not? The jury was told that. How can that possibly survive post-Connolly? I believe with respect to when the use had to be, the instruction only said it doesn't have to be contemporaneous with the possession of the firearm, but you still have to find their active user. So it's not that they have to smoke weed and hold a gun at the same time, and I don't read Connolly as requiring that. It just has to be that they are actively engaged in that usage during the time that they possess the firearm. So I think here there is enough in the record to show that, to support that finding, and based on that alone, the conviction should be affirmed. If the Connolly court says that it's facially constitutional for people who are actively using illegal substances, and here the record shows he was actively using illegal substances and it was actually raised by Mr. Daniels in his original brief that the evidence wasn't sufficient to reach that finding, the jury found it. It's been litigated, and the court should affirm based upon that alone. In addition— Do you have the jury instruction right in front of you? I don't have the whole thing in front of me, Your Honor. You keep going, but I'm going to pull it up. It's at 270 to 271. Yeah, and they didn't object, I agree, but I think it allowed a conviction on usage weeks before. Well, I'm going to pull it up. And my understanding and my memory was that inference was permitted, and inferences are allowed. We still had to prove the act of use, and I think there's a difference. There's a difference between saying if someone did this before, you can infer they're still doing it, and then we also provide additional evidence that they're still doing it. I think that the jury was—it was supported by the record. That finding was supported by the record, and that includes the fact that a month before his arrest, Mr. Daniels was stopped with firearms and multiple bags of marijuana in his vehicle. The instruction said such use is not limited to use on a particular day or within a matter of days or weeks, but rather that the unlawful use had occurred recently enough to indicate that the individual is actively engaged. Yes, Your Honor. And I believe that the nexus, the actual—the use, the way I read Connolly and the way I read the statute, is that the use doesn't have to be within a day or within 24 hours. It just has—you have to show that they're going to continue doing it. The phrase in the statute is unlawful user. Is an unlawful user. That's correct, Your Honor. It sounds to me very like the sort of gun world, possession of a gun. And the government started saying, well, possession could mean emboldenment far away, and the court said it's got to be active employment. It's got to be right there then. Sure. This sounds very similar. Connolly sounds very similar to me as he's got to be using the drugs at the same time as he's possessing the gun. It cannot be two weeks earlier he had drugs. Now we got him with a gun. He's a violator of 922G3. But you—presumably you disagree because otherwise this verdict can't stand. I do disagree. I think that the law—and we'll get to the analysis with Rahimi and Connolly and Bruin as well— but that the Second Amendment does allow the government to disarm someone who is an active user of a controlled substance, active illegal user of a controlled substance. And further problem though from Connolly is the court in Connolly, which is binding on us, strays pretty far away from the statutory language. It starts injecting other terms like intoxicated and impaired. If those are required elements, I don't see how you can convict Daniels. And not just impaired but continually impaired. Right, and I think that that's the second part of the argument, and it's something that Judge Higginson, you brought up, that can this— is this court bound by Connolly if there are additional analogs that the Connolly court— You're going to really set me off, and I know I sound like I'm ranting, but you have never on this case— the government has never tried to give much more than four pages of appellate history argument. We offered you the opportunity to go back down. Other courts are hearing historians, expert historians. Even today here, you're still not asking to go back down and prove history. So I've been just—if you're going to try to relitigate the history, I'm going to be pretty unsympathetic. The government has a heavy burden, and you didn't call the experts. I understand the court's concerns with that, but I do think it's important to remember that— post-Rahimi, when you invited supplemental briefing, and it's something that were raised in multiple supplements— But are you relitigating Connolly? I think the court can consider all of the analogs, and the court should consider all the analogs. Are you asking us to deviate from Connolly based on the four pages of history you gave us? I'm asking the court to deviate from Connolly as applied to Mr. Daniels because we've provided not only the intoxication analogs, the mental impairment analogs, but also the dangerousness analogs. And within that, you get to surety laws and going armed laws. And Connolly didn't consider surety or going armed in their evaluation of Connolly's challenge. And here's why it's important in this case. Going armed laws— You want us to take judicial notice of all these? They were raised in our brief. I know, but we're not a court of first view. Has any district court validated any of the historical evidence you're asserting right now? The Supreme Court validated in Rahimi. They relied on surety laws and going armed laws in determining that 922 G-8, which bans someone who's subject to a domestic violence restraining order, is sufficient under the Second Amendment. And that's the analysis the court should be taking and looking at. Look at the analysis that the court did in Rahimi. In Rahimi, again, they were looking at domestic violence restraining orders, and the court said we look at these other regulatory traditions to determine what the principles are. And those regulatory traditions were surety laws, which didn't generally disarm people. It required people to post a bond to keep their firearms. You didn't file a petition to rehearing in Connolly, right? Mandate's issue? Yes, Your Honor. My colleagues may want to hear you litigating the history behind Connolly, but it seems to me we're bound. I'd like to know is there any evidence, does the government have any evidence of either impairment or intoxication? In other words, if this court added the judicial gloss to the statute of this guy had to be presently impaired or intoxicated, do you have any evidence, or is your evidence just that he was using it at the same time as he possessed it? Do you understand my question? Yes, Your Honor. I believe that there was at least one drug test done. I believe there may have been two, one by pretrial services, and then there was one that was done pursuant to a warrant on Mr. Daniels that we didn't offer evidence of that at trial, because at the time the elements didn't require it. We'd have to look and see whether or not an expert could say, based upon the marijuana metabolites in his blood at this time, there's enough to say that he was impaired or intoxicated. I can't answer whether that expert testimony could be developed at this point in time because I don't know. But we also have his admissions during the pre-sentence report investigation that said, I used it every day, every other day since I was 18, and last used it the day before my arrest. And he'd been living in his car with these guns for over a month during his first stop and then the second stop as well. If Daniels were a brand-new defendant and you were prosecuting him, but you had Connolly, what would you say the element that the jury would be told would be? Ladies and gentlemen, you have to find beyond a reasonable doubt that this man, when he was possessing a gun, was what? Finish the sentence. I think if the court is going to find that it's bound by Connolly. Oh, of course we are. Our position is the court should revisit Connolly. All right. Just answer my question. I should have said that. Thank you, Your Honor. That they are actively impaired or actively intoxicated. I think that's how Connolly reads, Judge. Actively meaning presently. That they were. Connolly says presently under the influence. They were impaired or intoxicated during the time that they possessed the firearm. But again, and I know I've lost Judge Higginson on this. I do this to everyone. This is a complicated issue. I fully respect that. And the Supreme Court didn't listen to my separate concurrence, so I'm very happy to be humble. But I think that one of the things and one of the reasons that we're asking the court, at least in this as-applied context, to look at Connolly and look at the analogs, including the going-arm laws, is that it required proof of illegal conduct in order to disarm Mr. Daniels. And that's what going-arm laws did. They said if you engage in illegal conduct while you possess a firearm, that's a criminal offense and we can forfeit that gun. And that's what happens with 922G3 as applied to Daniels. And that's not something the Connolly court wrestled with, and it's not something this court wrestled with when you first heard Daniels. Nowhere has anyone looked at the legality of the conduct and the danger that that illegality imposes. And we raised this in our supplemental briefs, the fact that there are dangers attendant to the drug trade, even marijuana. People die and marijuana deals gone bad all the time. And we gave three examples of that too. So what we're saying is if someone is actively, and not necessarily at the same moment they are smoking that they're holding the gun, but if they are actively engaged in illegal conduct while they possess a firearm, the going-arm laws, in addition to all the other analogs we provided, do provide a sufficient basis for the court to find 922G3 constitutional. And in this case, you had the jury make that finding. So we'd submit and we'd ask the court to consider that approach. And again, it's supported by the evidence, supported by the fact that he admitted use of marijuana every other day for eight years, supported by the fact that in March of 2022 he was stopped with multiple firearms and marijuana. And then later, the day of his arrest in this case, he was stopped with multiple firearms, the smell of marijuana and burnt marijuana cigarettes in his ashtray. It all shows active use, and that goes to the going-arm laws. And I think that the court should look at that and say, okay, what did going-arm laws do? Look at the Rahimi analysis. And going-arm laws said that you could be disarmed if you engage in illegal conduct while you possess a firearm upon conviction. That's exactly what 922G3 does. And it doesn't matter that going-arm laws may not have applied only to illegal drug users. Going-arm laws didn't apply to domestic violence abusers. But in Rahimi, the Supreme Court said it's sufficient. And surety laws didn't only apply to domestic violence abusers. They applied to other people who posed a danger, and the Supreme Court said it's sufficient. And so if you look at going-arm, you look at other dangerousness analogs, and you look at intoxication and mentally ill, we believe that the court can look at this and say because Mr. Daniels, a jury found Mr. Daniels was engaged in illegal conduct and made that finding in order to return a guilty verdict, he can be disarmed under the Second Amendment. And I do think it's important to point out as well, Rahimi said with respect to 922G8, it's a temporary ban. It's a temporary ban while someone is under domestic violence restraining order. 922G3 is also a temporary ban while someone is actively engaged in illegal drug use. If you want to own a gun, quit using drugs. So your recommended addition to us is we affirm the conviction because the jury made a finding, and that's either under Rahimi dangerousness or under Connolly or both. I think it's under the dangerousness analogs, which include going-arm laws, surety laws, and the other— Connolly didn't say that, so do you win under Connolly also? Connolly didn't evaluate those. Connolly didn't look at surety laws. Under the evaluation done by Connolly, is there an argument to affirm the conviction? I think there is because I read Connolly as allowing for a conviction to occur if someone is engaged in that use, even if it's not at the contemporaneous time that they possess the firearm. But if the court disagrees and says that's what Connolly requires and we're not going to look at this anymore, then—or not use intoxication. I think there is enough evidence in the record to show that he did possess the firearm between his driver's seat and the console while he was smoking marijuana. But if the court is going to require proof of active intoxication at the time that he possessed the firearm and not look at— Where is the word intoxication coming from at all? I think impairment or intoxication come from the Connolly court. That's how I— Yeah, but where? It's not in the statute. It's unlawful user. We agree, and that's why we didn't present evidence of that at trial in the Daniels case. We just presented evidence that he was an active user. He wasn't a user. Back to this, the jury verdict that you just referred to. So given this instruction, we don't know what the jury found. The jury could have found that the use was weeks before. Exactly. And weeks could be—I mean I assume weeks means at least a month or more. I think that the instruction didn't say you can convict him based solely on past drug use. The instruction allowed the jury to infer that he is an active user based on past drug use. Actively engaged in such conduct. That's correct. And we would submit that that's what the evidence demonstrated. And so inferences are permitted all the time. Jury instructions often allow juries to make inferences. So it's an inference, but we still had to prove it. We had to demonstrate it. If you look at the larger Connolly opinion, it talks about a very tight temporal nexus. It's really hard for me to think you can reconcile Connolly with weeks earlier using marijuana. I know you're making that argument. Let's say—I mean let's say we don't agree with you that we're going to affirm that this is categorically consistent with Connolly or Rahimi. You've heard them say not only should we reverse his conviction, but you shouldn't be able to retrial. Do you have a response to that? I believe if the court is going to say under Connolly we have to prove intoxication, impairment, present use, any of those three, that it should be remanded and we should be able to offer that proof. But I also believe that the record demonstrates that disarming Mr. Daniels is consistent with the Second Amendment. Would you, just thinking about intellectually, Connolly gets a—the government gets a shot, right? That never even went to trial. Jeopardy never attached. Now everyone knows it's got to be a very different element. Connolly goes to trial. Here we're still on direct appeal. All of a sudden we have intervening authority. Connolly tells us the element, I know you disagree, is a lot tighter than it was given to this jury. Sounds to me like we just vacate the conviction. It's legal error. It's not evidentiary. And down below everyone is going to wrestle through what a post-Connolly element requires. What's required for active use? You go to trial. I think that that's one approach to take, Your Honor. But I do think – I recognize the Connolly opinion requires a closer temporal use. But I don't believe the instruction allows for a conviction unless I can show that he is still a user, which then gets us back to the analogs that we previously discussed, including the going arm laws, which I think is something the court should consider, especially in light of Rahimi. Beyond those issues – and we are treading the ground here. I mean, if it is reversed and remanded, is that a jury question, even though it's not in the statute? Or is that a judge question? I mean, there are things that aren't clear if it's remanded for the court to make those findings because the law doesn't require that, and that's why it wasn't offered at trial. But at the end of the day, we'd submit that because – and I recognize we disagree on the jury instructions too, but because the jury found that he was or is currently an unlawful user of a controlled substance, that takes it out of the realm of Connolly and takes it closer to the going arm laws. And if you do the analysis, do the Rahimi analysis, and the Rahimi analysis isn't looking for historical twins, dead ringers, and it's not an analysis that's trapped in amber. It's an analysis that looks for principles, and the underlying principle that flows through all of the analogs that we've provided, from those who are intoxicated to those who are mentally impaired to those who are dangerous, including those who are going armed, is that the government can disarm those whose conduct, illegal conduct, demonstrates that they're at risk, or those whose mental impairment or risk of mental impairment demonstrates that they're at risk. And the other thing that Connolly Court didn't really address that we raised is the mental impairment isn't just someone's drug use. In our supplemental brief, we discussed there's other potential mental impairments that go along with marijuana use as well, from psychosis to schizophrenia. There are other things, and we raised all that. There's a danger of that for someone who uses marijuana, particularly someone who uses marijuana from a young age for a long period of time. Mr. Daniels used it every other day for eight years. So we'd ask the court to look at all of those analogs and find that Section 922G3 is constitutional as applied to Mr. Daniels. And if the court has no further questions. I just had one. Do you know the facts behind Paragraph 63, the dirty urine? I don't. I know we did. It's either from the pretrial services report screening after he was taken into custody or after we got a search warrant for his hair and urine. And I don't remember which one that relies upon, Your Honor. All right. Thank you, Mr. Wagner. Ms. Gore for rebuttal. Thank you, Your Honors. As I was listening to opposing counsel, the one thing that kept running through my head was that the government here is looking for a way to broaden the scope of its ability to restrict a fundamental right. He kept referring to going armed laws, which were never raised until the very last supplemental brief and then only in a sentence or two, which reminded me of the fact that if you look at 922 Section G, those are all statuses. And they are statuses that, except for G-3 and maybe G-2, require some sort of adjudication. So for G-1, you have a felony conviction. For G-4, you have an adjudication of mental incompetence. For G-5, your illegal status is, as a noncitizen, there's an exception for that, which allows noncitizens to own guns. There are others that can't possess a machine gun. Period. That's not status. But that would not go to the fact of your ability to carry a gun. That goes more to the fact that both Bruin and Rahimi indicate that you can't just carry any type of weapon anywhere. So those types of weapons arguments, sensitive places arguments, those are a little bit separate and apart from the question of whether an ordinary citizen who possesses an ordinary firearm can have their rights restricted because of a status that didn't come with any adjudication. And the back and forth that you were having with opposing counsel I think sort of highlighted that because he kept referring to active user, active user, but that's not the standard. The standard under Connolly and the standard that you set in the initial Daniel's decision was active intoxication. Well, but we did use the statutory language as well. We say intoxication a couple times, impairment a couple times, but we also use the exact statutory language. Unlawful user? Yeah. And to that point, Your Honor, my colleagues were able to pull up the record. We did actually have an objection to the broadness and the lack of a definition of who an unlawful user is in the jury instructions, and that was discussed at the time the jury instructions were being reviewed in the record at page 260. And what we did there was we had offered alternative language to be used there that would have limited the scope. On this very issue? On this very issue. So you did preserve an objection? We did preserve the objection. I think, though, that even in our preservation of the objection, what Connolly has done and what this Court discussed in Daniel's, like that language would have had to be even tighter in order for it to pass constitutional muster in this case. Patterson, you may remember, was a pre-Bruin, I think even pre-Hiller, case involving G-3, and there was a lot of discussion about whether or not the statute itself was so vague that it was overbroad, and that's also an argument that we had raised and preserved in our initial briefing as well. Can you answer the question I ask the government? Because we do have these cases will be brought. Of course, we know from Connolly they can be brought when the person is actively using. So if you were in charge of the pattern jury, criminal jury committee, what would you say the government has to prove beyond a reasonable doubt for someone like Daniels? I think because the historical analogs have such a narrow definition of when somebody can be disarmed. It is a period of active intoxication, which means to me under the influence, there is evidence that they are objectively impaired. That's the instruction? I think that's the instruction. Make it cleaner. You have to find, ladies and gentlemen of the jury, that unlawful user means actively using the drugs, or are there more adjectives they have to put in? I think even using is not the proper term. That's the statutory word, and that was used in Connolly. So you think this is fair for you to say, ladies and gentlemen, you've got to find beyond a reasonable doubt, he's actively using drugs and he is intoxicated, plus he has to be shown to be impaired, all those things? I would use intoxication and impaired differently. Just like for DUI statutes, we have a standard for when somebody is actively using but maybe not impaired. Now what that is for marijuana or other substances, I'm not sure. Okay, so using at the same time, not weeks before, and intoxicated. And just give me a rough ballpark, what are we going to tell the jury intoxicated means when it comes to drugs? I think it depends on the drug. Wow. I think it depends on the drug. So a lot of work has to be done post Connolly. These jury instructions are going to be very complicated. And the statutory language is just use. I think they're workable. I think they will require expert evidence. We've reached a point with alcohol, for example, where there is a scientifically accepted standard that is included in most. I want to say my time is up. If you want me to finish the thought. We've reached a point in the scientific community where we know what active intoxication looks like for alcohol. And the same can be done for other drugs as well. But Connolly controls and we would ask that you reverse the conviction. Thank you, Your Honors. Thank you. Ms. Gore, your case is under submission and the court is in recess.